# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Curtis E.,<br><br>               Plaintiff,<br><br>v.<br><br>Andrew Saul, Commissioner of Social<br>Security,[1]<br><br>               Defendant. | Case No. 18-cv-02577 (HB)<br><br><br><br>**ORDER** |

Steven J. Drummond, 220 22nd Avenue E., Suite 109, Alexandria, MN 56308, for
Plaintiff Curtis E.

Michael A Moss, Assistant Regional Counsel, Social Security Administration,
1301 Young Street, Suite A702, Dallas, TX 75202, for Defendant Andrew Saul.

HILDY BOWBEER, United States Magistrate Judge[2]

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Curtis E. seeks judicial review of a final

decision by the Acting Commissioner of Social Security denying his application for

disability insurance benefits ("DIB"). The matter is now before the Court on the parties'

cross-motions for summary judgment [Doc. Nos. 11, 13]. For the reasons set forth

below, the Court denies Plaintiff's motion for summary judgment and grants the

---

[1]  Andrew Saul is the current Commissioner of Social Security. Pursuant to Federal Rule
of Civil Procedure Rule 25(d), Andrew Saul is substituted for Nancy A. Berryhill as the
Defendant in this action.

[2]  The parties have consented to have a United States Magistrate Judge conduct all
proceedings in this case, including the entry of final judgment.

Commissioner's motion for summary judgment.

## I. Background

Plaintiff was born in May 1962. (R. 233.)[3] His past relevant work includes employment as a heavy equipment operator, crew foreman, and large truck salesman. (R. 240.) Plaintiff reports that he began experiencing severe pain in his back, such that he could not work, in late 2013, and he has seen several doctors, physical therapists, and chiropractors since then. (R. 368, 371–74.) Eventually, Plaintiff underwent spinal surgeries in 2018 and 2019. (R. 162, Ex. Med. R. at 5 [Doc. No. 16].)

Plaintiff filed an application for DIB on December 31, 2015, alleging an onset of disability date of October 30, 2013. (R. 11.) His claims for disability were based on severe back and neck pain. (R. 13.) Plaintiff's applications were denied initially and on reconsideration, and he timely requested a hearing before an administrative law judge ("ALJ"). The ALJ then convened a hearing, at which Plaintiff and vocational expert Jesse Ogren testified. (R. 11.)

On December 22, 2017, the ALJ issued a written decision denying Plaintiff's application. (R. 8–20.) Following the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 13.) At step two, the ALJ determined Plaintiff had a severe impairment: degenerative disc disease of the lumbar and cervical spine with radiculopathy. (R. 13.) The ALJ found at the third step that the impairment

---

[3] The Social Security Administrative Record ("R.") is available at Doc. No. 9.

did not meet or equal the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14.)

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). (R. 15–19.) As part of that assessment, the ALJ analyzed whether the intensity, persistence, and limiting effects of Plaintiff's symptoms were as severe as he claimed. (*Id.*) The ALJ also analyzed and assigned evidentiary weight to four medical sources who opined on Plaintiff's condition. (R. 29–32.) The ALJ found Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b).[4] In light of this RFC, the ALJ concluded Plaintiff could perform past relevant work as an Automobile Salesperson and a Broker Truck Dealer. (R. 19.) Accordingly, the ALJ determined Plaintiff was not disabled. (R. 19.)

The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1.) Plaintiff then filed this action for judicial review.

Plaintiff argues the ALJ erred at the fourth step by concluding that Plaintiff had the RFC to perform light work. (Pl.'s Mem. Supp. Mot. Summ. J. at 1 [Doc. No. 12].) Specifically, Plaintiff challenges as insufficient the weight the ALJ gave to the opinions of two medical sources, Dr. Andrews and Dr. Johnson. (*See id.* at 5, 7–8.) Plaintiff also

---

[4] The ALJ found the following to be appropriate restrictions on Plaintiff's work: lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; sitting, standing, and walking up to 6 hours in an 8-hour workday; occasionally climbing ramps and stairs but never ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent reaching with the left arm; and frequent handling, fingering, and feeling with the left hand. (R. 15–16.)

argues the ALJ erred by failing to consider Plaintiff's "non-exertional limitations"—that is, his pain—in determining Plaintiff's residual functional capacity. (*Id.*)

On March 8, 2019, Plaintiff filed a "Notice" informing the Court that he had been granted DIB on March 3, 2019. (Notice [Doc. No. 15].) The disability benefits are retroactive, based on a finding that Plaintiff became disabled on December 23, 2017. (*Id.* at 1–2.) Plaintiff also filed supplemental medical records from a procedure performed in March of 2019. (Ex. Med. R.) Plaintiff did not explain how the March 3, 2019 award of DIB or the March 2019 medical records affected the merits of his claim for benefits for the relevant time period.

Since Plaintiff has been deemed disabled beginning on December 23, 2017, the time period most relevant to the Court's consideration of the Commissioner's decision is October 13, 2013 (the alleged onset of disability date) through December 22, 2017 (the date of the ALJ's decision). *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). Medical or other evidence before or after that period may also be relevant, but only if it relates to Plaintiff's impairments during that date range. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Accordingly, the Court considers Plaintiff's Motion for Summary Judgment as still active, but as only seeking benefits for the period of October 30, 2013 through December 22, 2017.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited in the parties' memoranda. The Court will incorporate the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II. Standard of Review

Judicial review of the SSA's denial of benefits is limited to determining whether substantial evidence on the record supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome, or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove his disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.    Discussion

### A.    Legal Standards Applicable to Step Four RFC Determination

An RFC assessment measures the most a person can do, despite his limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing a claimant's RFC.  20 C.F.R. § 404.1546(c).  The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  In addition, "RFC is not simply a laundry list of impairments and limitations."  *Gann v. Colvin*, 92 F. Supp. 3d 857, 884 (N.D. Iowa 2015).  Thus, the ALJ may distill what may be numerous impairments and limitations into a descriptive phrase, as long as it accurately captures a claimant's abilities in a work setting.  *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding the ALJ's description of the claimant as "able to do simple, routine, repetitive work" adequately accounted for the claimant's borderline intellectual functioning).

### B.    Whether the ALJ Erred in Determining Plaintiff's RFC for the Period of October 30, 2013 Through December 22, 2017

#### 1.    The ALJ's Consideration of Medical Opinions

##### a.    Dr. Andrews' Medical Opinion

Plaintiff's first challenge is that the ALJ disregarded the medical opinion of one of Plaintiff's treating physicians, Dr. James Andrews.  Plaintiff saw Dr. Andrews several times in 2016 and 2017, including for spinal steroid injections in January and June 2017 and medial branch blocks in February and June 2017.  (R. 643–45, 704, 711.)  The record

contains office notes but does not contain any report or opinion from Dr. Andrews regarding the limiting effects of Plaintiff's conditions, with one exception—Plaintiff's March 2017 application for a disability parking permit, on which Dr. Andrews checked a box indicating that Plaintiff could not walk more than 200 feet without stopping to rest, due to "severe disc disease lumbar." (R. 412.)

The opinion of a treating medical source should be considered controlling if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002). But a "treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995). An ALJ may discount a medical opinion if it is inconsistent with other substantial evidence, such as "where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch,* 201 F.3d at 1013 (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005).

Plaintiff argues that the "opinions of the treating physicians may not be ignored" (Pl.'s Mem. Supp. Mot. Summ. J. at 8.), but the ALJ did not ignore Dr. Andrews' March 2017 opinion as reflected in the disability permit application. He discussed it, but he ultimately concluded that "the medical evidence in the record [did] not support [that] opinion." (R. 18.) The ALJ pointed to Dr. Andrews' treatment notes from another visit that same month in which he found that Plaintiff had normal gait and station. (R. 642.)

That finding was replicated in May 2017 and again in August 2017. (R. 671, 725.) The ALJ also noted that although Plaintiff self-reported low back pain that radiated down his left leg into his foot, he did not use a cane for assistance in walking. (R.18.)

Plaintiff has very little record evidence of the limitations caused by his condition in general, and virtually nothing—other than the check-the-box parking permit application—from any of his treating medical providers to support the particular position that he could not walk 200 feet.[5] *See Halsell v. Astrue*, 357 F.App'x. 717, 723–24 (7th Cir. 2009) (finding it important that "apart from the parking-placard application," there was no evidence that the claimant "could not walk 200 feet"). Furthermore, Plaintiff has not produced any evidence that the limitation on his ability to walk had persisted over a period of 12 months, which is required to make out his claim for disability. 42 U.S.C. § 423(d)(1)(A).

It is also significant that Dr. Andrews' opinion was expressed via a simple check-the-box form. The Eighth Circuit Court of Appeals recently took a dim view of such forms in *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). The form completed by Dr. Andrews was even less robust than the form at issue in *Thomas*, which "consist[ed] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses." *Id.* As in *Thomas,* Dr. Andrews' assessment recounted

---

[5] In April 2016 Dr. Johnson, a medical consultative examiner, opined that Plaintiff would not be able to "stand or walk for long periods." Dr. Johnson's opinion is treated in more depth in the following section. Additionally, Plaintiff's records were reviewed by two SSA medical consultants in May and June 2016. Both doctors noted that Plaintiff "allege[d] the ability to walk only 200 ft," but found that claim was "not supported by medical evidence." (R. 237, 247.)

no medical evidence and provided no elaboration, and thus possessed "little evidentiary value." *Id.* (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)).[6] The ALJ was entitled to discount the opinion on that basis alone. *See id.*

The ALJ's determination to give no weight to the opinion of Dr. Andrews (as expressed by checking a box on a parking permit application) was therefore not contrary to substantial evidence.

### b. Dr. Johnson's Medical Opinion

Plaintiff also argues the ALJ improperly disregarded the opinion of a consultative medical examiner, Dr. A. Neil Johnson. (Pl.'s Mem. Supp. Mot. Summ. J. at 7.) The ALJ must consider a variety of factors in weighing medical opinions, including the length and nature of the treating relationship (if any), the consistency of the medical opinion with the record, and whether the opinion is supported by medical findings. 20 C.F.R. § 404.1527(c).

The governing regulations "do not strictly require the ALJ to explicitly discuss each factor under 20 C.F.R. § 404.1527(c)." *Mapson v. Colvin*, No. 14-CV-1257 (SRN/BRT), 2015 WL 5313498, at *4 (D. Minn. Sept. 11, 2015) (internal quotation and brackets omitted); *cf.* 20 C.F.R. § 404.1527(f)(2). On the contrary, the ALJ must only "explain the weight given to opinions from these sources or otherwise ensure that the

---

[6] The ALJ apparently considered the disability parking permit application to represent Dr. Andrews' medical opinion, so this Court will do the same. But several courts have questioned whether the representation on such an application even qualifies as a medical opinion under 20 C.F.R. § 404.1527. *See Kujawa v. Berryhill*, No. EP-16-CV-81-MAT, 2018 WL 3435355, at *2 (W.D. Tex. July 16, 2018) (collecting cases).

discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). "While it may [be] preferable for the ALJ to discuss a [medical opinion] in more depth," the conclusions drawn from a medical opinion are valid if "there is substantial evidence in the record supporting the ALJ's finding." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

Dr. Johnson examined Plaintiff in April 2016 and drew a number of conclusions (R. 572–74), some of which the ALJ adopted. For example, it was Dr. Johnson's opinion that Plaintiff should "avoid any heavy lifting" (R. 574), which is consistent with the ALJ's determination that Plaintiff could only perform light work, lifting "up to 20 pounds occasionally" (R. 15).

On other points, however, the ALJ did not adopt Dr. Johnson's conclusions. Based on that same April 2016 visit, Dr. Johnson concluded Plaintiff should "avoid . . . bending or twisting." (R. 574.) The ALJ found that to be an "overstatement of [Plaintiff's] limitations":

> [T]he objective medical evidence from Dr. Johnson's examination shows that the claimant has cervical left and right rotation of 70 degrees out of 80 degrees, and dorsolumbar rotation of 30 degrees out of 30 degrees. . . . The claimant had left and right lateral flexion of his dorsolumbar spine of 20 degrees out of 25 degrees. . . . The claimant also had dorsolumbar flexion of 60 degrees out of 90 degrees. This objective medical evidence seems to suggest that the claimant is not as limited on bending and twisting as Dr. Johnson opined.

(R. 18.) Similarly, Dr. Johnson reported that Plaintiff "walked with an antalgic small stepped gait with mild to moderate limp to the right," and opined that Plaintiff would not

"be able to stand or walk for long periods."  (R. 573–74.)  But the ALJ noted that this

finding was contradicted by later reports in March 2017, May 2017, and August 2017 that

Plaintiff walked with a normal gait.  (R. 642, 671, 725.)

     Importantly, Dr. Johnson's report was also reviewed by two SSA medical

consultants, Dr. Charles T. Grant and Dr. Gregory H. Salmi, in May and June 2016.

Drs. Grant and Salmi concluded from the objective medical evidence cited in

Dr. Johnson's report that Plaintiff was able to stand and/or walk for a total of 6 hours

throughout the workday, contrary to Dr. Johnson's finding that Plaintiff could not "stand

or walk for long periods."  (R. 238, 248, 574.)  Specifically, Drs. Grant and Salmi both

reported that Plaintiff's "physical and x-ray findings [were] unremarkable, except for

mild to moderate L-spine changes."  (R. 239, 249.)  In reviewing Plaintiff's records, both

doctors found that, notwithstanding some postural limitations, Plaintiff was still able to

balance, stoop (bend at the waist), kneel, crouch (bend at the knees), and crawl

"frequently."  (R. 238–39, 249.)

     An ALJ must consider evidence from non-examining consultants under 20 C.F.R.

§ 404.1527, and such "consultants are highly qualified and experts in Social Security

disability evaluation."  20 C.F.R. § 404.1513a(b)(1).  "Findings of fact made by State

agency medical and psychological consultants and other program physicians and

psychologists regarding the nature and severity of an individual's impairment(s) must be

treated as expert opinion evidence of non-examining sources at the administrative law

judge and Appeals Council levels of administrative review."  SSR 96-6p, 1996 WL

374180, at *1 (S.S.A. July 2, 1996).

> Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *6 (S.S.A. Mar. 16, 2016). Though an ALJ generally must "give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you," 20 C.F.R. § 404.1527(c)(1), that is not always the case, *see* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")).

In such a situation, it is the ALJ—not this Court—who is "charged with the responsibility of resolving conflicts among medical opinions." *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Importantly, there is no requirement that the ALJ's RFC findings be supported by a specific medical opinion, such as the opinion of Dr. Johnson. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ evaluated the conflicting evidence in the record and determined that the great thrust of it did "not show clinical findings to support greater physical limitations than set out in the residual functional capacity." (R. 16.) Although it might have been possible to reach a different conclusion based on the record, it is not the Court's job to weigh the evidence anew, but rather to evaluate whether the ALJ's conclusions were reasonable. *See Robinson*, 956 F.2d at 838. Accordingly, the Court finds the ALJ's opinion was well-reasoned and supported by

substantial evidence.

## 2. Additional Medical Evidence

In the time since the ALJ's determination, Plaintiff has introduced new medical evidence that was not submitted to the ALJ. First, Plaintiff submitted evidence to the Appeals Council that he had cervical spinal surgery on January 2, 2018. (Pl.'s Mem. Supp. Mot. Summ. J. at 3; R. 33, 162–83.) Plaintiff subsequently reported that he had a lumbar spinal fusion on May 22, 2018. (Pl.'s Mem. Supp. Mot. Summ. J. at 4; R. 38–41.) Additionally, Plaintiff has submitted new evidence to this Court that was not presented to the ALJ or Appeals Council, revealing that Plaintiff had yet another spinal surgery on March 25, 2019. (Ex. Med. R. at 5.)

To the extent these supplemental records were submitted in support of a finding of disability beyond December 22, 2017, they are no longer relevant. Plaintiff has already been awarded DIB for that period, so supplemental information on that point is inapposite. To the extent these records are submitted in order to inform the Court's review of the relevant time period, the Court may consider them insofar as they relate to Plaintiff's impairments during that date range. *See Vandenboom*, 421 F.3d at 750.

Plaintiff argues that the fact that such surgeries were ultimately necessary indicates that his representations to the ALJ during the hearing were "accurate and credible." (*Id.* at 5.) Therefore, he contends, the new evidence should be taken into account in determining whether the ALJ erred in discounting Plaintiff's claimed subjective symptoms. The Court undertakes that analysis in the following section.

### 3. The ALJ's Consideration of Claimed Severity and Limiting Effects of Plaintiff's Subjective Symptoms

Plaintiff argues the ALJ's determination was "completely devoid of any consideration of [Plaintiff's] non-exertional complaints of radicular symptoms and cervical and low back pain." (Pl.'s Mem. Supp. Mot. Summ. J. at 9.) Rather, Plaintiff argues, "the only considerations which the Administrative Law Judge found relevant were isolated office notes addressing range of motion and gait." (*Id.*) Although Plaintiff uses the term "nonexertional limitations," his true challenge seems to be that the ALJ accorded too little weight to his own account of his pain and limitations—that is, to his subjective symptoms.[7] Plaintiff proffers evidence of his 2018 and 2019 surgeries to show that his subjective reports of intense pain were valid and consistent with the objective medical evidence.

But an ALJ must consider several factors in evaluating a claimant's subjective symptoms and their effect on his RFC, in addition to whether the symptoms are consistent with the objective medical evidence. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). These factors include the claimant's daily activities; work history; intensity, duration, and frequency of symptoms; side effects and efficacy of

---

[7] Nonexertional limitations are restrictions that inhibit a person's ability to do his job, but are not strength-related conditions like standing, walking, and lifting. 20 C.F.R. § 404.1569(a). Common examples include difficulty maintaining concentration, difficulty remembering details, or difficulty tolerating certain workplace features, such as dust or fumes. § 404. 1569(c). Pain is not in itself a limitation, *see id.*, although pain may sometimes *cause* nonexertional limitations, such as difficulty maintaining concentration.

medications; triggering and aggravating factors; and functional restrictions. *Polaski*, 739 F.2d at 1322; SSR 16-3p, 2016 WL 1119029, at *5. The ALJ need not explicitly discuss each factor, (*Goff*, 421 F.3d at 795), however, and a court should defer to the ALJ's findings when the ALJ expressly discredits the claimant and provides good reasons for doing so. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990).

Here, the ALJ considered "all symptoms and the extent to which these symptoms . . . [were] consistent with the objective medical evidence." (R. 15.) Indeed, the ALJ began his step four analysis with a thorough re-telling of Plaintiff's description of his pain:

> At the hearing, the [Plaintiff] testified that his lower back, his leg, and his feet are the issue. He stated that he could not even lie in bed on his back anymore. He noted that he has to lie in bed on his shoulder. He stated that he rolls back and forth all night long, getting about three-and-a-half hours of sleep at night. He testified that his neck, shoulder, and back pain is worse when he gets up and starts moving, or if he is doing something. He stated that it is made worse by mowing the lawn, or picking up anything that has weight. . . . He testified that he could walk about half a block before he would have to sit down because of back pain, and his leg would go numb. He stated that if he had a grocery cart underneath him, he could walk a little further. He testified that he could stand for about five to ten minutes before having the same symptoms as walking. If he were sitting, he stated he would have to get up every 30 minutes to move around.
>
> [Plaintiff] stated that along with his neck pain, he has symptoms in his left arm, including the two smallest fingers on the left side, which are numb and burning all of the time. He noted that he has had cramps in his left hand for about six to eight months, and the symptoms have continued to get worse. He testified that because of the numbness, he could only pick clothes out of the washer with his right hand.

(R. 14–15.)

The ALJ also noted, however, that aspects of the record undermined Plaintiff's statements about the "intensity, persistence, and limiting effects of his symptoms." (R. 16.) For example, from the summer of 2014 through the spring of 2016—the heart of the date range for which Plaintiff seeks DIB—the record reveals that Plaintiff had been "cutting trees all summer" with a chain saw (R. 556), "working on a vehicle and loading wood" (R. 557), and "working outside" doing "light spring work" (R. 570).

Thus, contrary to Plaintiff's argument, the ALJ relied on more than just "isolated office notes addressing range of motion and gait." While the record clearly indicates Plaintiff experienced intense pain at times, the record also supports the ALJ's assessment that the pain was inconsistent, and not entirely limiting. That Plaintiff's condition worsened and later required surgical intervention—and indeed, was ultimately so disabling as to justify the award of DIB in June 2018—does not retroactively dispel these inconsistencies.

The Court finds the ALJ considered the entire record, including Plaintiff's testimony about his pain, when making his RFC determination. Accordingly, the ALJ's decision that Plaintiff had the RFC to perform light work was based on proper considerations and was grounded in substantial evidence.

### C.     Conclusion

The ALJ did not err in determining Plaintiff's RFC from October 30, 2013 through December 22, 2017. The ALJ properly considered conflicting medical evidence and medical opinions and accounted for Plaintiff's pain in determining Plaintiff's RFC.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Curtis E.'s Motion for Summary Judgment [Doc. No. 11] is **DENIED**; and

2. Defendant Andrew Saul's Motion for Summary Judgment [Doc. No. 13] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: November 12, 2019          *s/ Hildy Bowbeer*_____
                                  HILDY BOWBEER
                                  United States Magistrate Judge